Filed 8/6/21  P. v. Henderson CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JENNIFER LYNN HENDERSON,<br><br>    Defendant and Appellant. | G059427<br><br>(Super. Ct. No. 05HF0372)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Maria D. Hernandez, Judge.  Affirmed.

Fay Arfa for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Meredith S. White and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

Jennifer Lynn Henderson appeals from the trial court's postjudgment order denying her petition for resentencing pursuant to Penal Code section 1170.95.[1] Henderson asserts the court improperly determined she was ineligible for resentencing as a matter of law. We disagree, and affirm the postjudgment order denying her petition for resentencing.

FACTS

I. *Underlying Crimes*

A detailed recitation of the facts is set forth in the prior opinion in this case. (*People v. Henderson* (July 17, 2009, G039432) [nonpub. opn.] (*Henderson I*).) In sum, a jury convicted Henderson of two counts of first degree murder for financial gain for her involvement in the murders of Thomas and Jackie Hawks. Skylar Deleon and two confederates murdered the Hawks in November 2004. As we explained in *Henderson I*, "The evidence at trial established Deleon, Alonso Machain, and John Kennedy ruthlessly murdered the Hawks on their yacht, the 'Well Deserved,' by tying them to an anchor and throwing the anchor over the side. Deleon posed as a buyer of the yacht, Machain as his friend, and Kennedy as his accountant. At the time, Deleon and Henderson were married. After Henderson rejected the prosecutor's two offers of complete immunity in exchange for her testimony against Deleon, the People prosecuted Henderson for two counts of first degree murder based on the theory she used her child to persuade the Hawks that Deleon was a legitimate buyer, knowing he was going to murder them. [¶] At trial, the court admitted evidence Henderson assisted Deleon in escaping liability for the murder of Jon Jarvi months before the offenses here. With respect to the Hawks, the evidence established that on the day before their final voyage, Deleon sensed the Hawks doubted he was a legitimate buyer, and Henderson complied with his instructions to bring their infant child to the yacht to convince the Hawks otherwise. The evidence at trial also

---

[1] All further statutory references are to the Penal Code.

established that on the day he murdered the Hawks, Deleon called Henderson 15 times, from the time he was in Long Beach at 7:33 a.m., to early the next morning at 1:32 a.m., when he returned to Long Beach." (*Ibid.*)

II. *Jury Instructions*

As relevant to the resentencing petition, the trial court instructed the jury on evidence of an uncharged conspiracy, which allowed the jury to find Henderson guilty of murder under the natural and probable consequences doctrine. Specifically, the court instructed the jury with CALCRIM No. 6.11 (Conspiracy - Joint Responsibility) in pertinent part: "You must determine whether the defendant is guilty as a member of a conspiracy to commit the originally agreed upon . . . crimes, and, if so, whether the crime alleged [in count[s] 1 and 2] was perpetrated by [a] co-conspirator[s] in furtherance of that conspiracy and was a natural and probable consequence of the agreed upon criminal objective of that conspiracy." It further instructed that evidence of the uncharged offense, accessory after the fact, could be considered to decide whether Henderson "acted with the intent to commit murder for financial gain in this case. [¶] The defendant had a motive to commit the offenses alleged in this case. [¶] The defendant knew that the perpetrators intended to commit murder when she allegedly acted in this case. [¶] The defendant had a plan or scheme to commit the offenses alleged in this case."

It also provided the following instruction on murder with malice aforethought (CALCRIM No. 520): "The defendant is charged in [c]ounts 1 and 2 with murder. [¶] To prove that the defendant is guilty of this crime, the [p]eople must prove that: [¶] 1. The defendant committed an act that caused the death of another person. [¶] AND [¶] 2. When the defendant acted, she had a state of mind called malice aforethought. [¶] There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder. [¶] The defendant acted with express malice if she unlawfully intended to kill. [¶] The

3

defendant acted with implied malice if: [¶] 1. She intentionally committed an act; [¶] 2. The natural and probable consequences of the act were dangerous to human life; [¶] 3. At the time she acted, she knew her act was dangerous to human life; AND [¶] 4. She deliberately acted with conscious disregard for human life."

The court instructed in aiding and abetting as follows: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the [p]eople must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime. [¶] If all of these requirements are proved, the defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor."

The court instructed on felony murder based on a murder occurring during a burglary.[2] It also instructed the jury that to find the financial gain special circumstances allegation true as to each count of murder, it had to find Henderson intended to kill and the killing was carried out for financial gain.

III. *Verdict and Resentencing Petition*

A jury found Henderson guilty of the first degree murders of the Hawks. (§ 187, sub. (a)). It also found true the special circumstance allegations the murders were

---

[2]    We note during closing argument, the prosecution told jurors they were not being asked to find Henderson guilty under a felony murder theory of liability: "I am not asking you to find felony murder." However, in context of the entire closing argument, it appears the prosecution did, in fact, argue felony murder.

4

committed intentionally for financial gain (§ 190.2. subd. (a)(1)) and multiple murder (§ 190.2, subd. (a)(3)). The court sentenced Henderson to two consecutive life terms without the possibility of parole.

In March 2019, Henderson filed a petition for resentencing pursuant to section 1170.95. Henderson asserted she made an adequate prima facie showing in her request for resentencing because it was not clear she was convicted as a direct aider and abettor. This was based on the fact that the trial court instructed on, and the prosecutor argued, the theories of felony murder and natural and probable consequences. Henderson also argued the evidence presented at trial did not demonstrate she acted with reckless indifference to human life or that she was a major participant in the crimes committed by her husband. The prosecution contended Henderson was ineligible as a matter of law because the jury found true special circumstance allegations requiring a finding she had the intent to kill both victims. After receiving briefing from the parties, the trial court denied the petition without issuing an order to show cause or holding an evidentiary hearing.

DISCUSSION

I. *S.B. 1437 and Section 1170.95*

S.B. 1437, "amended sections 188 and 189 and added section 1170.95 to the Penal Code, significantly modifying the law relating to accomplice liability for murder." (*People v. Lopez* (2019) 38 Cal.App.5th 1087, 1098-1099, rev. granted Nov. 13, 2019, S258175 (*Lopez*); Cal. Rules of Court, rule 8.1115(e)(1) [while review pending may rely on for persuasive value].) Section 1170.95, subdivision (a), provides, in relevant part, "A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . ."

5

The Legislature enacted S.B. 1437 to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (§§ 188, 189, as amended by Stats. 2018, ch. 1015, § 1, subd. (f).)

Under section 1170.95, if the petitioner makes a prima facie showing, the court must issue an order to show cause and, absent a waiver and stipulation by the parties, hold a hearing to determine whether to vacate the murder conviction, recall the sentence, and resentence the petitioner. (§ 1170.95, subds. (c), (d)(1).) A prima facie showing under section 1170.95 requires the following: (1) an accusatory pleading was filed against the petitioner allowing the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) he or she was convicted of first or second degree murder following a trial, or accepted a plea offer to first or second degree murder in lieu of trial, at which he or she could have been so convicted; and (3) that he or she could not be convicted of murder due to the amendments to sections 188 and 189. (§ 1170.95, subd. (a)(1)-(3).)

The "authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, [subdivision] (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980.) "If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief because he or she has met the requirements of section 1170.95[, subdivision] (a), then the trial court should issue an order to show cause. [Citation.]" (*Id*. at pp. 980-981.) An order summarily denying a

6

section 1170.95 petition without issuing an order to show cause is a question of law subject to de novo review. (*Id*. at p. 981.)

II. *Analysis*

Henderson argues the trial court improperly denied her petition after she made a prima facie showing under section 1170.95. We disagree.

The conspiracy instruction allowed the jury to find Henderson guilty as a direct aider and abettor. It asked the jury to decide whether Henderson "acted with the intent to commit murder for financial gain in this case. [¶] The defendant had a motive to commit the offenses alleged in this case. [¶] The defendant knew that the perpetrators intended to commit murder when she allegedly acted in this case. [¶] The defendant had a plan or scheme to commit the offenses alleged in this case."

The trial court also gave an instruction on aiding and abetting, which provided, in relevant part, "The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

In addition to finding Henderson guilty of first degree murder, the jury returned a true finding on the financial gain special circumstance. In our prior opinion we explained, "the instruction requires the jury to find '[t]he *defendant* intended to kill[,]' and because Henderson was the only defendant in this case, we conclude the instruction properly informed the jury that to find the financial gain special circumstance true, it had to find *Henderson* intended to kill the Hawks for financial gain. . . . [T]here was overwhelming evidence Henderson intended to aid and abet the Hawks's murders for

7

financial gain. . . . [T]he financial gain special circumstance . . . require[d] the jury to conclude beyond a reasonable doubt Henderson intended to kill the Hawks." (*Henderson I*, *supra*, (G039432).) Accordingly, the jury's true finding on the financial gain special circumstance, along with the various conspiracy and aiding and abetting instructions, demonstrated Henderson harbored the requisite intent to kill, disqualifying her as a matter of law from being resentenced pursuant to section 1170.95.

## DISPOSITION

The postjudgment order denying Henderson's section 1170.95 petition is affirmed.


O'LEARY, P. J.

WE CONCUR:


FYBEL, J.


THOMPSON, J.

8